## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ENGERGY POLICY ADVOCATES,

     Plaintiff,

     v.

U.S. DEPARTMENT OF THE INTERIOR,

     Defendant.

Civil Action No. 21-1411 (JDB)

## MEMORANDUM OPINION

At issue in this case are two requests for records submitted by plaintiff Energy Policy Advocates ("EPA") to the United States Department of the Interior ("Interior") under the Freedom of Information Act ("FOIA"). The requests were submitted in 2021, and Interior conducted a search and produced responsive records—with numerous documents withheld or produced with redactions—in late 2021 and early 2022. Interior filed the present motion for summary judgment on both the adequacy of its search and its bases for withholding information. EPA opposes both. For the reasons set forth below, the Court will grant Interior summary judgment as to the adequacy of its searches and the propriety of its withholdings under FOIA Exemption 6 but will deny summary judgment as to Interior's withholdings under Exemption 5.

## Background

EPA submitted its first request to Interior on April 15, 2021, seeking certain "records of and/or associated with the Outlook account of Senior Counselor to the Secretary Elizabeth Klein" ("Outlook Request"). Apr. 15, 2021 FOIA Req. [ECF No. 26-2] at 1. Specifically, EPA requested:

1. Calendar Invitations: all calendar and/or meeting invitations sent to or from (including copying) Elizabeth Klein dated January 21, 2021 through the date you process this request, inclusive; and
2. Microsoft Teams: all logs of Microsoft Teams meetings sent to or from (including copying) Elizabeth Klein and involving one or more participants

1

> with a non-@ios.doi.gov address dated January 1, 2021 through the date you
> process this request, inclusive.

Id.  In response to this request, Interior "searched Ms. Klein's Microsoft Outlook and Calendar for all calendar and Microsoft Teams invitations" from January 1, 2021 to May 18, 2021.  Decl. of Leah Fairman [ECF No. 25-4] ("Fairman Decl.") ¶ 8.  According to Interior, this search "would return any and all calendar requests or Microsoft Teams meeting invitations."  Id.

EPA filed its second FOIA request on April 16, 2021 ("Correspondence Request"), which sought

> all electronic correspondence, whether email, text, SMS, etc. . . . and any
> accompanying information, including also any attachments, a) sent to or from or
> copying Senior Counselor to the Secretary Elizabeth Klein, b) at any time from
> January 1, 2021 through April 15, 2021, inclusive, that c) is to, from or copies
> Special Assistant to the President David Hayes.

See Apr. 16, 2021 FOIA Req. [ECF No. 26-3] at 1.  In response to this request, Interior "searched Ms. Klein's SharePoint, Desktop Outlook, Calendar, and Desktop OneDrive for potentially responsive records using the search term David Hayes" from January 1, 2021 to April 15, 2021. Fairman Decl. ¶ 9.  Klein also "searched both her personal and work cell phones for any texts or SMS between her and Mr. Hayes" during the same time frame.  Id.

Thus, according to Interior, it has conducted searches responsive to both the Outlook Request and the Correspondence Request covering any materials that would be relevant and responsive.  See Fairman Decl. ¶¶ 8–9.  EPA disagrees and filed this case in May 2021, arguing that Interior's search for both requests was inadequate and that it improperly withheld responsive records.  See Compl. for Declaratory & Injunctive Relief [ECF No. 1].  Interior filed a motion for summary judgment on August 26, 2022.  See Def.'s Mot. for Summ. J. [ECF No. 25]; Mem. of Law in Supp. of Mot. [ECF No. 25-1] ("Mot.").  EPA filed an opposition on September 26, 2022, see Mem. of Law in Opp'n to Mot. [ECF No. 26] ("Opp'n"), and Interior replied on October 28,

see Def.'s Reply to Opp'n [ECF No. 30] ("Reply").  The summary judgment motion is now ripe for decision.

## Analysis

Interior moves for summary judgment on both the adequacy of it search and the propriety of its withholdings.  See Mot. at 6.  "FOIA cases typically and appropriately are decided on motions for summary judgment."  Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  At the summary judgment stage, a court "must view the evidence in the light most favorable to the nonmoving party[,] . . . draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).  "The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" Prop. of the People, Inc. v. Off. of Mgmt. & Budget, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting Competitive Enter. Inst. v. EPA, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

## I.   Adequacy of Interior's Search

Interior first argues it is entitled to summary judgment as to the adequacy of its searches in response to EPA's requests.  See Mot. at 6–8.  To prevail on summary judgment based on the adequacy of its search, "an agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested, which it can do by submitting a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain

responsive materials (if such records exist) were searched." Shapiro v. U.S. Dep't of Just., 40 F.4th 609, 612–13 (D.C. Cir.) (cleaned up), cert. denied, 143 S. Ct. 526 (2022).

Declarations detailing the search are given "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Bartko v. U.S. Dep't of Just., 898 F.3d 51, 74 (D.C. Cir. 2018) (quoting SafeCard Servs., Inc. v. Sec. Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Such declarations, however, must be "specific enough to enable [plaintiffs] to challenge the procedures utilized." Weisberg v. U.S. Dep't of Just., 627 F.2d 365, 371 (D.C. Cir. 1980). Interior's search is described in a declaration submitted by Leah Fairman, the Deputy FOIA Officer for Interior's Office of the Secretary. [1] See Fairman Decl. ¶ 1.

EPA challenges Interior's search in response to both FOIA requests. Starting with the Outlook Request, Interior "searched Ms. Klein's Microsoft Outlook and Calendar for all calendar and Microsoft Teams invitations." Fairman Decl. ¶ 8. This search "would return any and all calendar requests or Microsoft Teams meeting invitations." Id. EPA argues that this description of the search "expressly acknowledges that it only searched Interior's Outlook platform" and excluded other calendars possibly used by Klein. Opp'n at 6–7. But as Interior points out, this is precisely what EPA asked for in its FOIA request: it seeks only "records of and/or associated with the Outlook account of" Klein. See Apr. 15, 2021 FOIA Req. at 1 (emphasis added); Reply at 2. Searching only Outlook is of course "reasonably expected," Shapiro, 40 F.4th at 612, to produce

---

[1] EPA argues that this declaration is inadmissible hearsay, which may not be considered at the summary judgment stage. See Opp'n at 6 & n.2. But parties at summary judgment are not "required to produce evidence in a form that would be admissible at trial"—the only requirement is that the evidence "be capable of being converted into admissible evidence." Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000). There is no indication that Fairman would not be able to testify at trial about the search performed based on personal knowledge. See Fairman Decl. ¶ 2 ("I make this declaration based upon my personal knowledge and information available to me . . . ."). In any event, courts in this District have held that, at the summary judgment stage, "courts may consider hearsay in FOIA cases when assessing the adequacy of the agency's search." Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv., 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (citing Niskanen Ctr., Inc. v. U.S. Dep't of Energy, 328 F. Supp. 3d 1, 9–10 (D.D.C. 2018)).

the requested information—namely, Outlook records.   Thus, the Court will grant summary judgment to FOIA on the adequacy of this search.

As for the Correspondence Request—which sought certain "electronic communications"— Interior has searched Klein's SharePoint, Outlook, Calendar, OneDrive, and Teams, and Klein searched her personal and work phones.  See Fairman Decl. ¶ 9; Def.'s Resp. to Mar. 3, 2023 Order [ECF No. 32] ("Def.'s Teams Resp.") ¶¶ 3–5.  Interior used the search term "David Hayes," or variations thereof, Fairman Decl. ¶ 9; Def.'s Teams Resp. ¶ 5, to find messages that were "to, from, or copie[d] Special Assistant to the President David Hayes," Apr. 16, 2021 FOIA Req. at 1.

EPA takes issue with Interior's decision not to search Teams and Zoom chats as part of its Correspondence Request search.  See Opp'n at 8–9.  On March 3, 2023, the Court ordered Interior to file a notice informing the Court whether it had searched Microsoft Teams chats in response to the Correspondence Request.  See Mar. 3, 2023 Order [ECF No. 31].  Interior responded on March 10, stating that it was not sure whether Teams chats had been included in the initial search, but that it had searched Teams chats following the Court's March 3 Order and found no responsive records. See Def.'s Teams Resp. [2]

As for Zoom chats, EPA notes that Zoom has a function allowing in-meeting chats and alleges that Interior used "Zoom prolifically during COVID to host meetings."  Opp'n at 8.  In response, Interior argues that Zoom chats are not "agency records"—and thus not covered by

---

[2] EPA responded to this filing on March 13, 2023.  See Pl.'s Position with Respect to Def's Teams Resp. [ECF No. 33] ("Pl.'s Teams Resp.").  It argued that because the Correspondence Request sought communications "sent to or from or copying" Klein and Hayes, Interior's March 2023 search—which "filter[ed] Ms. Klein's Microsoft Teams through a sender and recipient filter for any chats between Ms. Klein's account and" Hayes, Def.'s Teams Resp. ¶ 5—was insufficient.  See Pl.'s Teams Resp. at 2–3.  EPA is concerned that the search may have missed chats that were "authored by any other party, e.g., among multiple parties in . . . 'threads' to which Ms. Klein and Mr. Hayes participated or were parties and so received the records."  Id.  But Interior's search and its results should assuage that concern.  Interior's search started with "Ms. Klein's Microsoft Teams" and filtered her messages using a "sender and recipient filter" and variations of Hayes's name.  Def.'s Teams Resp. ¶ 5.  Any messages that were sent to (or "copied") Klein would be in her Teams records, and filtering those messages by Hayes's name in the "received" field would thus capture any messages sent in a group to both Klein and Hayes.  Interior represented that there were no such messages, so there are no relevant threads to review.

FOIA—and, in any event, the dearth of other communications and meetings between Klein and Hayes suggests there would be no responsive Zoom records.  Mot. at 7 n.5; Reply at 3–5.

District courts may only order agency action under FOIA upon "a showing that an agency has (1) improperly (2) withheld (3) agency records."  U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 (1989) (cleaned up and emphasis added); see 5 U.S.C. § 552(a)(4)(B).  The term "agency records" "extends only to those documents that an agency both (1) creates or obtains, and (2) controls at the time the FOIA request was made."  Aguiar v. Drug Enf't Admin., 865 F.3d 730, 735 (D.C. Cir. 2017) (cleaned up) (quoting Jud. Watch, Inc. v. U.S. Secret Service, 726 F.3d 208, 216 (D.C. Cir. 2013)).

Interior notes that it "does not retain control or possession of Zoom files . . . and as such has no ability to search for potential records stored in those systems."  Fairman Decl. ¶ 9; see Mot. at 7 n.5.  In response, EPA asserts in passing that Interior did have control or possession of Zoom chats.  See Opp'n at 9 ("[T]his ignores the fact that Interior possessed the chat correspondence when received (and/or created) by Interior officials . . . .").  But this "purely speculative claim[]," Bartko, 898 F.3d at 74 (internal quotation marks omitted), is rebutted by Interior's declaration and a commonsense understanding of the Zoom platform—chats are not saved by the sender or user in the same way as is true for other platforms, like text messages or Teams.

EPA accordingly argues that if Interior indeed "[n]ever captured the records," then, by failing to retain them, it created an impermissible "loophole to FOIA" by keeping those records away from the public.  Opp'n at 10.  But EPA cites no authority for the proposition that Interior was obligated to retain custody over these specific communications.  Instead, the weight of authority counsels that the government is under no obligation to capture adnd obtain control over every written communication by its employees.  See Kissinger v. Reps. Comm. for Freedom of the Press, 445 U.S. 136, 151–52 (1980) ("FOIA is only directed at requiring agencies to disclose

those 'agency records' for which they have chosen to retain possession or control."). Courts—
including the Supreme Court—have frequently held that documents that arguably could be
captured and stored, but were not, are not "agency records" for FOIA purposes. See, e.g., Forsham
v. Harris, 445 U.S. 169, 182 (1980) (rejecting argument that "agency records" includes "all
documents created by a private [party] to which the Government has access, and which the
Government has used").

Interior did not control chats sent over the Zoom platform at the time of the FOIA request.
See Fairman Decl. ¶ 9. There is no genuine dispute as to that. Because Interior had no FOIA
obligation to obtain and store such chats, declining to search for and produce them was not
improper. The Court will accordingly grant summary judgment to Interior on the adequacy of its
searches for both FOIA requests.

## II. Department of Interior's Withholdings

Interior also moves for summary judgment on the propriety of its withholdings and
redactions. See Mot. at 8–19. Certain categories of documents are exempt from FOIA and thus
can be properly withheld by an agency in response to a FOIA request. See 5 U.S.C. § 552(b).
Interior withheld information pursuant to two statutory exemptions: Exemption 6, which protects
"personnel and medical files and similar files the disclosure of which would constitute a clearly
unwarranted invasion of personal privacy," id. § 552(b)(6), and Exemption 5, which covers certain
information "that would not be available by law to a party other than an agency in litigation with
the agency," id. § 552(b)(5). EPA challenges Interior's withholdings under both exemptions. See
Opp'n at 14–22.

Summary judgment on the propriety of withholdings is proper when the agency's
declarations "describe the justifications for nondisclosure with reasonably specific detail,
demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984)).  "Ultimately, 'when an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant.'"  Cause of Action Inst. v. Exp.-Imp. Bank of the United States, 521 F. Supp. 3d 64, 76 (D.D.C. 2021) (quoting Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007)).

### A.  Exemption 6 Withholdings

FOIA exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  This exemption can apply to "bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'"  Jud. Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 391 (D.C.Cir.1987)).  To determine whether an agency appropriately withheld personal information pursuant to Exemption 6, courts "must balance the private interest involved (namely, the individual's right of privacy) against the public interest (namely, the basic purpose of the Freedom of Information Act, which is to open agency action to the light of public scrutiny)." Horowitz v. Peace Corps, 428 F.3d 271, 278 (D.C. Cir. 2005) (internal quotation marks omitted). Accordingly, when a plaintiff fails to identify a "public interest that would be served by the disclosure" of the personal information, "invocation of FOIA Exemption 6 [i]s proper."  Cleveland v. United States, 128 F. Supp. 3d 284, 300 (D.D.C. 2015).

Interior withheld (1) "the personal e-mail address of Department of Interior employees where they had also included their Department of the Interior e-mail address on the same email chain or meeting invitation," Fairman Decl. ¶ 30, (2) "the government email addresses for White House and Executive Office of the President employees, Department of Defense employees, and

Department of Homeland Security employees," id., and (3) David Hayes's cell phone number, see Vaughn Index [ECF No. 25-5] at 2–3.[3]  For email redactions, if after the redaction the reader could not tell who the redacted email address corresponded to, Interior "overlaid the redaction with the name of the individual."  Fairman Decl. ¶ 30.  Thus, the records show who was involved but do not show contact information for everyone.  EPA opposes those redactions.  It argues that phone numbers and emails are not the type of information covered by Exemption 6 and that there is a "public interest" in the redacted information.  See Opp'n at 14–17.

Phone numbers, email addresses, and other contact information may qualify as "personnel . . . files" implicating personal privacy interests.  See, e.g., Jud. Watch, Inc., 449 F.3d at 152–53; Pinson v. Dep't of Just., 313 F. Supp. 3d 88, 112 (D.D.C. 2018); Cleveland, 128 F. Supp. 3d at 300.  In those instances, for disclosure to be required, such information must serve the public interest in some way.

EPA first argues that disclosure of the phone numbers would "allow the public to learn if senior government appointees are using, e.g., a communications app such as 'Signal' . . . in lieu of their agency-provided cell phone."  Opp'n at 16.  The only challenged redacted phone number appears to be David Hayes's cell phone number.  See Vaughn Index at 2–3; Exhibit C to Opp'n at 57.  EPA does not explain how knowing his cell phone number would give the public any information about anyone's use of Signal or other messenger apps.  And Hayes certainly has an interest in "preventing at least some unsolicited, unwanted calls from reaching [him] at [his] home"—a foreseeable effect of publicizing his cell phone number.  See Bader Fam. Found. v. U.S. Dep't of Educ., No. 21-CV-1741 (DLF), 2022 WL 4355259, at *7 (D.D.C. Sept. 20, 2022) (cleaned up) (approving redaction of employee cell phone number).

---

[3] It also withheld conference call dial-in numbers, but EPA does not challenge that withholding.  See Exhibit C to Opp'n [ECF No. 26-4] at 47; Mot. at 8 n.6.

As for personal email addresses, EPA suggests that knowing whether government employees use their personal email may inform the public whether they "copy [their] office as legally required[,] and the public/congressional oversight/targets of SEC actions may pursue that." Opp'n at 16. Whether an official uses his or her personal email in that manner may be a matter of public interest—but revealing the personal email address itself does not shed light on that practice. The redacted documents are more than sufficient to determine whether an employee copies their personal email address—such a practice is indicated by Interior's redaction labeled "30(b)(6)" over an Interior employee's email. See, e.g., Exhibit C to Opp'n at 56 (redacting Klein's personal email); see also Competitive Enter. Inst. v. U.S. Env't Prot. Agency, 12 F. Supp. 3d 100, 122 (D.D.C. 2014) ("The public interest in exposing potential violations of agency policy has already been satisfied by the Vaughn entries in question . . . ."). Knowing what the personal email address is adds no relevant information. And on the other side of the scale, there is a strong privacy interest in keeping federal employees' personal email addresses private. See, e.g., Long v. Immigr. & Customs Enf't, 279 F. Supp. 3d 226, 244 (D.D.C. 2017) (withholding employee contact information as "federal employees have a legitimate privacy interest in avoiding targeted harassment based on their role").

Interior also withheld other agencies' employees' work emails. Some courts have recognized that employees may have some privacy interest in their work contact information. See Pinson, 313 F. Supp. 3d at 112 (approving of redaction of work phone numbers because "in some instances, employees' direct contact information may be personal information" the disclosure of which could lead to "harassment"); see also Shurtleff v. U.S. Env't Prot. Agency, 991 F. Supp. 2d 1, 18 (D.D.C. 2013). And even if that interest is somewhat small, "something, even a modest privacy interest, outweighs nothing every time." Nat'l Ass'n of Retired Fed. Emps. v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989). EPA does not offer a plausible public interest served by

disclosure of White House and other agency employees' work emails—it merely states that they are "inherently work-related" without explaining why they pertain to a matter of public interest. Opp'n at 15.

Because any public interest in publishing the relevant email addresses and phone numbers—assuming such an interest even exists—does not outweigh the privacy interest in preventing unwanted attention and harassment, the Court will grant Interior summary judgment on its Exemption 6 withholdings.

### B. Exemption 5 Withholdings

FOIA exempts "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption applies to "those documents, and only those documents, normally privileged in the civil discovery context." Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). Interior withheld a significant amount of information under two privileges: the deliberative process privilege and the presidential communications privilege.

#### i.   Deliberative Process Privilege

"The deliberative-process privilege shields internal agency 'advisory opinions, recommendations and deliberations' in order to 'protect[] the decision making processes of government agencies.'" Cause of Action Inst. v. Exp.-Imp. Bank of the U.S., 521 F. Supp. 3d 64, 76 (D.D.C. 2021) (quoting Sears, 421 U.S. at 150). To qualify for withholding under the deliberative process privilege, a record must be both pre-decisional and deliberative. Jud. Watch, Inc. v. U.S. Dep't of Def., 847 F.3d 735, 739 (D.C. Cir. 2017). A record is pre-decisional if it was "generated before the adoption of an agency policy" and deliberative if it "reflect[s] the give-and-take of the consultative process." Id. (internal quotation marks omitted). Further, an agency may only withhold a document if it "reasonably foresees that disclosure would harm an interest

protected by" the exemption, and "boilerplate" recitations of harm are insufficient.  Cause of
Action, 521 F. Supp. 3d at 77 (internal quotation marks omitted).  Finally, the agency "bears the
burden of establishing the character of the decision, the deliberative process involved, and the role
played by the documents in the course of that process."  Citizens for Resp. & Ethics in Wash. v.
U.S. Dep't of Just., 45 F.4th 963, 972 (D.C. Cir. 2022) (internal quotation marks omitted).

Interior has not met this burden for any withheld record.  Interior gives the same conclusory
explanation in the Vaughn index for each record withheld pursuant to Exemption 5:

> withheld this portion of the email thread between a senior Department official and
> a senior White House official concerning major policy decisions under the
> Deliberative Process Privilege.  The material reflects frank and open discussion of
> Departmental decisions and considerations.  If these views were to be released to
> public scrutiny, it would chill future officials from freely discussing important
> Departmental policy choices and considerations, thereby impairing the
> Department's ability to make informed decisions.

Vaughn Index at 4–67.  Amazingly, it provides this explanation—which purports to apply to an
"email thread"—even for documents that are not emails.  See, e.g., id. at 26.  And the declaration
provided by Leah Fairman adds very little—it restates the legal test for the deliberative process
exemption and concludes that it is met, see Fairman Decl. ¶¶ 17–18, and then identifies the subject
of the documents as (a) "Inter-agency coordination on effort led by the White House" and (b) "U.S.
policy concerning the management and operations of the Department of the Interior and its bureaus
and offices," id. ¶ 19.

Unfortunately for Interior, this broad-brush approach will not cut it.  The repeated generic
explanations in its Vaughn index (which are not improved by Interior's declaration) are insufficient
to demonstrate the "character of the decision, the deliberative process involved, and the role played
by the documents in the course of that process."  Citizens for Resp. & Ethics in Wash., 45 F.4th at
972.  In short, the Court knows nothing about the reason for withholding the records, except that
the agency has read the relevant legal standard and believes that its withholding was proper, but

that is clearly not enough.  See, e.g., Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation, 3 F.4th 350, 370 (D.C. Cir. 2021) (rejecting assertion of harm that was "wholly generalized and conclusory, just mouthing the generic rationale for the deliberative process privilege itself").

Interior has thus not carried its burden—or even come close to doing so—to show that the withheld information is exempt based on the deliberative process privilege, and the Court will deny summary judgment as to this category of withholdings.

## ii.  Presidential Communications Privilege

Each record withheld pursuant to the deliberative process privilege discussed above was also withheld pursuant to the presidential communications privilege.  This privilege applies to "communications that directly involve the President" and those "authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate."  In re Sealed Case, 121 F.3d 729, 748, 752 (D.C. Cir. 1997).  On one hand, the presidential communications privilege is narrower than the deliberative process privilege because it covers only "presidential decisionmaking and deliberations," Loving v. Dep't of Def., 550 F.3d 32, 37 (D.C. Cir. 2008) (emphasis added); yet, within that narrower category, it offers broader protections, as it applies "regardless of whether the documents are predecisional or not," id., and it may cover "factual material" outside the scope of the deliberative process privilege, In re Sealed Case, 121 F.3d at 751.

Interior's justification for its withholdings pursuant to the presidential communications privilege suffers from the same flaw as its justification for invoking the deliberative process privilege—the Vaughn index lists the same boilerplate explanation for each entry:

> [w]ithheld portions of this email under the Presidential Communications Privilege
> because the redacted portions of this email reflect information solicited by the
> President's immediate advisors through the White House Climate Policy Office,
> which serves to advise the President.  The information concerns the operations of
> the Department of the Interior and briefing of the Presidential Advisor's [sic] on
> the topic.  Release of the withheld information would harm the expression of
> candid, objective, and even blunt or harsh opinions as well as the comprehensive
> exploration of all policy alternatives before a presidential course of action is
> selected.

Vaughn Index at 4–67.  Fairman's declaration adds little additional detail.  It broadly concludes that these records do, in fact, fall under the presidential communications privilege and claims that they concern the same topics cited in the deliberative process privilege explanation—(a) interagency coordination on a White House-led effort and (b) policy on the management of Interior.  See Fairman Decl. ¶¶ 25–28.

This generic explanation entirely fails to explain why the withheld documents fall under the presidential communications privilege.  Interior identifies a list of individuals it asserts are "an immediate White House advisor's staff" but neither demonstrates whether they "have broad and significant responsibility for investigating and formulating the advice to be given the President" nor explains how the withheld documents relate to any such specific responsibility.  See In re Sealed Case, 121 F.3d at 752; Fairman Decl. ¶ 26.

Most concerningly, there are documents that are not even connected to one of the White House staffers that Interior identifies, which is plainly insufficient.  See, e.g., Vaughn Index at 31 (describing "Email from Elizabeth [Klein] to Tanya Trujilo," neither of whom are identified as a White House staffer or advisor).  But even for those documents connected to a White House advisor, not all advisors fall within this privilege—"the D.C. Circuit . . . has unambiguously rejected an approach that would classify a broad assortment of Executive Branch officials as such

advisers."[4] <u>Prop. of the People</u>, 330 F. Supp. 3d at 387 (citing <u>Jud. Watch, Inc.</u>, 365 F.3d at 1112–17); <u>see also</u> <u>In re Sealed Case</u>, 121 F.3d at 752 ("The presidential communications privilege should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President."). Asserting that every individual "was an immediate advisor to the President, or a member of the staff of an immediate advisor to the President," Fairman Decl. ¶ 25, gives the Court no basis to decide whether the privilege actually applies to these particular advisors, giving this specific advice on the particular matter involved, as memorialized in these specific documents. Put simply: "[t]he government cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer far-ranging category definitions for information." <u>Prop. of the People</u>, 330 F. Supp. 3d at 380 (cleaned up). But that is unfortunately all that Interior offers here.

The Court will therefore deny Interior's motion for summary judgment on the propriety of all its withholdings under Exemption 5.

*       *       *

The Court will grant summary judgment as to Interior's search and the propriety of its withholdings under Exemption 6. It will, however, deny summary judgment as to its withholdings

---

[4] EPA also suggests that some of the White House staff and advisors listed are employed in roles that are themselves subject to FOIA. Courts have declined to extend the presidential communications privilege to employees at departments subject to FOIA, even when the individual employee wears a "dual-hat" as agency employee and presidential advisor. <u>See</u> <u>Jud. Watch, Inc. v. Dep't of Just.</u>, 365 F.3d 1108, 1120 (D.C. Cir. 2004) ("[T]he Attorney General, as head of the Justice Department, could not be treated as a non-agency exempt from the FOIA when he was engaged in his presidential advisory functions." (citing <u>Ryan v. Dep't of Just.</u>, 617 F.2d 781, 788 (D.C. Cir. 1980))); <u>Prop. of the People</u>, 330 F. Supp. 3d at 388 ("[H]eads of agencies that are subject to FOIA are not immediate White House advisers for purposes of the application of the privilege.").

For example, courts have found that the White House Council on Environmental Quality is subject to FOIA. <u>See</u> <u>S. Env't. Law Ctr. v. Council on Env't. Quality</u>, 507 F. Supp. 3d 694 (W.D. Va. 2020); <u>see also</u> <u>Pac. Legal Found. v. Council on Env't. Quality</u>, 636 F.2d 1259 (D.C. Cir. 1980) (holding that the Council is an "agency" for purposes of Government in Sunshine Act). Particularly in light of this precedent, if Interior wishes to rely on those advisors for presidential communication privilege purposes, <u>see</u> Fairman Decl. ¶ 26(b), (c), (h), it must offer significantly more explanation and argument.

under Exemption 5, and order the parties to submit a joint status report recommending next steps

in this litigation.  A separate Order consistent with this Opinion will issue on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>March 21, 2023</u>